UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                        CIV. NO. S-10-1492 LKK

      Plaintiff,

         v.

SSC FARMS 1, LLC, et al.,

      Defendants.
_____/

IN RE:

SK FOODS, L.P.                        CIV. NO. S-10-1493 LKK

      Debtor.
_____/

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                        CIV. NO. S-10-1496 LKK

      Plaintiff,

         v.

CSSS, L.P., et al.,

      Defendants.
_____/

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                              CIV. NO. S-10-1497 LKK

      Plaintiff,

          v.

FRED SALYER IRREVOCABLE
TRUST, et al.,

      Defendants.

_____/

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                              CIV. NO. S-10-1498 LKK

      Plaintiff,

          v.

SKF AVIATION, LLC., et al.,

      Defendants.

_____/

IN RE:

SK FOODS, L.P.

      Debtor.

BRADLEY SHARP,                              CIV. NO. S-10-1499 LKK

      Plaintiff,

          v.

SCOTT SALYER, et al.,

      Defendants.

_____/

IN RE:

SK FOODS, L.P.

       Debtor.

BRADLEY SHARP,                                          CIV. NO. S-10-1500 LKK

       Plaintiff,

         v.
                                                       <u>O R D E R</u>
SCOTT SALYER, et al.,

       Defendants.
_____/

Before the court are several appeals of an order of the Bankruptcy Court denying Appellants' motion for a stay of proceedings pending resolution of a related criminal matter also before this court, <u>U.S.A. v. Salyer</u>, No. 2:10-cr-00061-LKK. The Appellee moves to dismiss the appeal on jurisdictional grounds and opposes the appeal on the merits. For the reasons described below, the order of the Bankruptcy Court is reversed.

## I. BACKGROUND

### A.   The Criminal Proceeding

On January 5, 2010, the government filed a sealed complaint against Frederick Scott Salyer ("Salyer"). An arrest warrant was issued by a magistrate judge later that day. On February 4, 2010, Federal Bureau of Investigations ("FBI") officers arrested Salyer. On February 18, 2010, the U.S.A. filed an indictment.

On April 29, 2010, the government filed a superseding indictment. It brings twelve counts and two forfeiture allegations against Salyer. These include two counts under 18

3

1  U.S.C § 1962(c) for conducting and conspiring to conduct the

2  affairs of an enterprise though a pattern on racketeering

3  activity, three counts under 18 U.S.C. § 1343 for wire fraud,

4  one count under 18 U.S.C. § 1519 for destruction, alteration, or

5  falsification of records in a federal investigation, and five

6  counts under 15 U.S.C. § 1 for conspiracy in restraint of

7  trade.[1]

8       With respect to the first count of racketeering, the

9  government alleges that Salyer was the primary leader of SK

10  Foods. Superceding Indictment 3. It claims that Salyer was part

11  of an enterprise that, *inter alia*, "increas[ed] SK Foods'

12  profits by fraudulently inducing certain of SK Foods' customers

13  to pay for adulterated and misbranded processed tomato products

14  by causing the falsification of . . . grading factors and data

15  contained on the quality control documents that accompanied

16  customer-bound shipments of processed tomato products that were

17  produced, purchased, and sold by SK Foods . . . ." Id. at 10.

18  The U.S.A. alleges that Salyer engaged in these activities from,

19  approximately, January 1998 through April 2008. Id. at 13. The

20  government further alleges numerous acts that it claims

21  constitute a pattern of racketeering activity. These include

22  several claims of wire and mail fraud relating to the sale of

23  tomato products to various entities, including creditors in the

24

_____

25       [1] As is almost self evident the court has found the case
   complex within the meaning of the Speedy Trial Act, which results
26  in the case not subject to the time strictures of the act.

4

instant bankruptcy proceedings, and claims of bribery.

In the second count of racketeering, the government claims that Salyer conspired with persons employed by and associated with SK Foods to conduct the acts described above during the same time period. Id. at 39-40.

The three counts of wire fraud include communications to purchasers of SK Foods' tomato product. Id. at 40-49. Each concerns allegations of bribery of certain employees of the purchasing companies. These companies include creditors in the instant bankruptcy proceedings.

With respect to the count of destruction, alteration, or falsification of records in a federal investigation, the government alleges that Salyer altered and falsified, or caused others to alter and falsify, the minutes of a December 14, 2007 Board of Directors meeting for the SK Foods Entities. Id. at 51. It claims that he caused the removal of references to Randy Rahal as a Director and Officer of SK Foods several months after Rahal pled guilty to a three count information in this court. Id. at 50. The factual basis for Rahal's plea indicated that he served on the SK Foods Board of Directors from 2004 to 2008 and routinely paid bribes on behalf of SK Foods. Id. at 50-51.

The five counts of price fixing concern alleged conspiratorial activity to fix the price of SK Foods tomato products for several companies, including creditors in the instant bankruptcy proceedings. Id. at 52-61.

The two forfeiture allegations seek recovery of all real

1   and personal property that constitute or is derived from the

2   proceeds traceable to the racketeering and wire fraud counts,

3   which would apparently include property and proceeds otherwise

4   subject to the bankruptcy proceeding.

5        **B.   The Bankruptcy Proceedings**

6        On appeal is an order of the Bankruptcy Court denying

7   Appellants' motion to stay proceedings in seven adversarial

8   actions. These include (1) an action to substantively

9   consolidate various non-debtor SK Foods entities with the SK

10  Foods estate, No. 10-02014; (2) an action to avoid a fraudulent

11  transfer of a drum line to CSSS, an Appellant entity, pursuant

12  to a written contract, No. 09-02543; (3) an action seeking title

13  to three parcels of real property on the grounds that SK Foods

14  provided funds for the purchase of the property and was not

15  repaid, No. 09-02692; (4) a claim of breach of fiduciary duty

16  against Salyer premised on the allegations in the previous three

17  actions, No. 10-02015; (5) an action to avoid allegedly

18  preferential and fraudulent transfers, No. 10-02016; (6) an

19  action to recover money that was allegedly loaned by SK Foods to

20  Salyer to pay for a life insurance policy, No 10-02017; and (7)

21  an action for substantive consolidation of the SK Foods and the

22  RHM Estates, No. 09-29162. The RHM Estates are not parties to

23  this appeal.

24       **C.   Procedural Posture**

25       On April 28, 2010, Salyer, the Scott Salyer Revocable

26  Trust, SK PM Corp., SKF Canning, LLC, Blackstone Ranch

1  Corporation, Monterey Peninsula Farms, LLC, Salyer Management

2  Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS

3  Farms, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III,

4  LLC, SKF Aviation, LLC, CSSS, LP, Fred Salyer Irrevocable Trust,

5  and Gerard Rose as Trustee of Fred Salyer Irrevocable Trust

6  ("Appellants") filed a motion to stay the seven adversary

7  proceedings discussed above pending resolution of the criminal

8  proceedings against Salyer. They argued that a stay should be

9  issued, *inter alia*, to protect Salyer's Fifth Amendment rights

10 and the due process rights of the other Appellants who, they

11 contend, require Salyer's testimony to mount a defense to the

12 adversary proceedings. On May 4, 2010, Appellants filed in the

13 bankruptcy proceedings a request for judicial notice of the

14 Superceding Indictment of Salyer, which was filed on April 29,

15 2010. They did not attempt to amend or revise their motion in

16 light of the Superceding Indictment.

17     On May 12, 2010, the Official Committee of Unsecured

18 Creditors filed an opposition to Appellants' motion to stay.[2]

19 Also on May 12, 2010, Bradley Sharp, the Bankruptcy Trustee

20 ("Appellee" or "Trustee") filed a response to the motion to

21 stay. The Trustee argued, *inter alia*, that the indictment and

22 the adversary proceedings are not based on the same matter or

23 same or closely related facts, that prosecution of the adversary

24 proceedings will not impair Salyer's Fifth Amendment rights, and

25

26     [2] Only the Trustee has opposed the instant appeal.

1   that a stay is otherwise not appropriate.

2       On June 1, 2010, the Bankruptcy Court denied Appellants'

3   motion for a stay. It decided, *inter alia*, that, with one minor

4   exception, the factual allegations in the adversary proceedings

5   bear no significant relationship to the allegations in the

6   indictment. The court continued to balance the so-called <u>Keating</u>

7   factors, from which it determined that a stay of proceedings was

8   not proper. <u>See</u> <u>infra</u> Section III.B.1 (discussion of <u>Keating</u>

9   factors). This order was issued in all of the seven adversarial

10  proceedings discussed above.

11      On June 16, 2010, Appellants filed notices of appeal of

12  this order in each of the seven proceedings. On June 17, 2010,

13  Salyer filed in the criminal action an Emergency Application to

14  Enjoin and Stay Discovery of the bankruptcy proceedings. On June

15  18, 2010, the court temporarily stayed discovery in the

16  bankruptcy proceedings in light of the June 17, 2010 motion. On

17  August 3, 2010, the court held a hearing on the emergency

18  application. As a result of the hearing, the court continued the

19  stay until resolution of the instant appeals.

20      On August 4, 2010, Appellants filed an opening brief. They

21  argue that, *inter alia*, the criminal indictment and the

22  adversary proceedings overlap, that the denial of the stay

23  offends the due process rights of the non-debtor entities, and

24  that the Bankruptcy Court did not properly apply the <u>Keating</u>

25  factors. On August 19, 2010, the Trustee filed a brief in

26  opposition. He contended that the Appellants failed to show that

1  the Bankruptcy Court abused its discretion in denying the stay

2  of proceedings. Appellants filed a reply on August 3, 2010.

3      The Trustee also filed two motions relating to the appeals.

4  First, on August 16, 2010, the Trustee filed a motion to dismiss

5  the appeals on the grounds that the court lacks jurisdiction to

6  hear them. Second, the Trustee filed a motion to strike a

7  declaration filed in support of Appellants' brief on the ground

8  that the evidence was not presented to the Bankruptcy Court. The

9  court heard oral argument on the appeals and motions on October

10 12, 2010.

11                          **II. STANDARD**

12      The standard of review of bankruptcy court decisions by

13 district courts is well-established, and uncontested in the

14 instant action. <u>See</u> Appellants' Opening Brief re: Stay at 4;

15 Appellants' Opening Brief re: Preliminary Injunction at 2;

16 Appellee's Opening Brief re: Stay at 2-3. When reviewing

17 decisions of a bankruptcy court, district courts apply standards

18 of review applicable to the courts of appeals when reviewing

19 district court decisions. <u>In re Baroff</u>, 105 F.3d 439, 441 (9th

20 Cir. 1997); <u>see also</u> <u>In re Fields</u>, No. CIV. S-09-2930 FCD, 2010

21 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of

22 review over a bankruptcy court's decision is identical to the

23 standard used by circuit courts reviewing district court

24 decisions.") (citation omitted).

25      The bankruptcy court's conclusions of law are reviewed *de*

26 *novo*. <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. 809, 814

                                  9

1   (9th Cir. 1995) (citing In re Pecan Groves of Arizona, 951 F.2d

2   242, 244 (9th Cir. 1991)). District courts review the bankruptcy

3   court's findings of fact for clear error. In re Sunnymead

4   Shopping Center Co., 178 B.R. at 814 (citing In re Siriani, 967

5   F.2d 302, 303-04 (9th Cir. 1992)); see also Fed. R. Bank. P.

6   8013 ("Findings of fact, whether based on oral or documentary

7   evidence, shall not be set aside unless clearly erroneous . . .

8   .")

9        District courts review a "bankruptcy court's choice of

10  remedies . . . for an abuse of discretion, since it has broad

11  equitable remedial powers." In re Sunnymead Shopping Center Co.,

12  178 B.R. at 814 (citing In re Goldberg, 168 B.R. 382, 284 (9th

13  Cir. 1994) (other citations omitted.). The Ninth Circuit has

14  held that, "Under this standard, 'a reviewing court cannot

15  reverse unless it has a definite and firm conviction that the

16  court below committed a clear error of judgment in the

17  conclusion it reached upon a weighing of the relevant factors."

18  In re Sunnymead Shopping Center Co., 178 B.R. at 814 (quoting In

19  re Goldberg, 168 B.R. at 384). With respect to review of a

20  denial of a motion to stay, district courts review a bankruptcy

21  court's "ruling on a party's request to stay proceedings for an

22  abuse of discretion." Fed. Sav. & Loan Ins. Corp. v. Molinaro,

23  889 F.2d 899, 902 (9th Cir. 1989) (citing Mediterranean

24  Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th

25  ////

26  ////

1  Cir. 1983)).[3]

2  ### III. ANALYSIS

3  #### A.   Motion to Dismiss

4  The Trustee moves to dismiss the instant appeal on the

5  grounds that this court lacks jurisdiction to hear it.[4]

6  Specifically, the Trustee contends that the order denying the

7  stay is not a final order and is not appropriate for

8  interlocutory review. Appellants argue that this court has

9  jurisdiction because this order is final under the irreparable

10 injury doctrine and the pragmatic approach to assessing finality

11 in bankruptcy proceedings. They further argue that the appeal is

12 properly subject to interlocutory review.

13 Under 28 U.S.C. § 158(a), "district courts . . . have

14 jurisdiction to hear appeals . . . with leave of the court, from

15 interlocutory orders and decrees, of bankruptcy judges entered

16 in cases and proceedings referred to the bankruptcy judges under

17

18

---

19 [3] It appears to this court quite odd that district courts
   review decisions of bankruptcy courts in this manner given that
20 bankruptcy courts are a subsidiary division of district courts. It
   may be that the restricted standards of review are merely a way of
21 protecting both courts from unnecessary repetition of frivolous
   contentions, and that in more serious matters district courts
22 should not apply such a deferential review. Nonetheless, this court
   does not consider whether district courts may depart from this
23 standard of review in unusual circumstances because all parties
   agree as to the applicable standard and there appears to be no
24 support for that position, in any event.

25 [4] The Trustee has also moved to strike a declaration filed in
   support of the appeal. The court will consider this motion along
26 with its discussion of the merits of the appeal itself.

section 157 of this title."[5] Section 157 allows district courts to refer any or all cases under title 11 to a bankruptcy court. The district court here so referred the instant matters on appeal to the bankruptcy court. Accordingly, district courts have "discretionary appellate jurisdiction over . . . interlocutory order[s] of a bankruptcy court." In re Kassover, 343 F.3d 91, 94 (2d Cir. 2003); see Matter of Texas Extrusion Corp., 844 F.2d 1142, 1156 (5th Cir. 1988) (same); In re Laurent, 149 Fed. Appx. 833, 835 (11th Cir. 2005); see also Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 441 n.1 (9th Cir. 1983) (interpreting similar language that was part of 28 U.S.C. § 1334(b) prior to 1984 modification).

This type of appellate jurisdiction differs significantly from the jurisdiction granted to Courts of Appeal to hear appeals of interlocutory orders. See In re Kassover, 343 F.3d at 94; Fondiller, 707 F.2d at 441 n.1. Specifically, the district court maintains original jurisdiction over bankruptcy proceedings, and merely refers such proceedings to bankruptcy courts. In re Combustion Engineering, Inc., 391 F.3d 190, 225 (3d Cir. 2004) (citing 28 U.S.C. §§ 151, 157(a)); 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not

---

[5] The court notes that Appellants did not file a motion for leave to appeal the denial of their motion for a stay of proceedings. Under Fed. R. Bank. 8003(c), "If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court . . . may consider the notice of appeal as a motion for leave to appeal." The court so considers the notice of appeal in this case.

exclusive jurisdiction of all civil proceedings arising under
title 11, or arising in or related to cases under title 11."});
28 U.S.C. § 157 ("Each district court may provide that any or
all cases under title 11 and any or all proceedings arising
under title 11 or arising in or related to a case under title 11
shall be referred to the bankruptcy judges for the district.").
Thus, a district court may decide to hear an interlocutory
appeal of any order of a bankruptcy court subject only to review
by the Court of Appeals for abuse of discretion.

In light of this broad authority to hear interlocutory
appeals, the court does not decide whether the order at issue is
final nor does it determine whether it falls within any of the
exceptions briefed by the parties. Rather, the court grants
Appellants leave to appeal the Bankruptcy Court's order on the
grounds that determining whether to stay the proceedings will
significantly effect the nature of the bankruptcy proceedings
and, conceivably, the criminal proceedings pending in this
court. Thus, the Trustee's motion to dismiss is denied.

**B.  Merits of the Appeal**

**1.  Standard to Stay Proceedings**

Stays of civil proceedings pending the outcome of criminal
proceedings are not ordinarily required by the Constitution.
Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th
Cir. 1995) (citations omitted). The Ninth Circuit has held that,
"[I]n the absence of substantial prejudice to the rights of the
parties involved, [simultaneous] parallel [civil and criminal]

1  proceedings are unobjectionable under our jurisprudence." Id.

2  (quoting S.E.C. v. Dresser Indust., Inc., 628 F.2d 1368, 1374

3  (D.C. Cir. 1980)). A court may, however, decide in its

4  discretion to stay civil proceedings "when the interests of

5  justice seem [] to require such action." Id. (internal citations

6  omitted).

7      When deciding whether to stay civil proceedings, courts

8  should consider "the particular circumstances and competing

9  interests involved in the case[s]." Id. (quoting Federal Sav. &

10  Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989)).

11  The Circuit has instructed the court to consider "the extent to

12  which the defendant's fifth amendment rights are implicated."

13  Id. (internal quotation omitted).

14      Additionally, courts "should generally consider the

15  following factors:

16      (1)   the interest of the plaintiffs in proceeding

17            expeditiously with this litigation or any particular

18            aspect of it, and the potential prejudice to

19            plaintiffs of a delay;

20      (2)   the burden which any particular aspect of the

21            proceedings may impose on defendants;

22      (3)   the convenience of the court in the management of its

23            cases, and the efficient use of judicial resources;

24      (4)   the interests of persons not parties to the civil

25            litigation; and

26  ////

14

1    (5)   the interest of the public in the pending civil and

2          criminal litigation."

3    Id. at 324-25 (citing Molinaro, 889 F.2d at 903).

4         The Ninth Circuit has cautioned, however, that, "A

5    defendant has no absolute right not to be forced to choose

6    between testifying in a civil matter and asserting his Fifth

7    Amendment privilege. Not only is it permissible to conduct a

8    civil proceeding at the same time as a related criminal

9    proceeding, even if that necessitates invocation of the Fifth

10   Amendment privilege, but it is even permissible for the trier of

11   fact to draw adverse inferences from the invocation of the Fifth

12   Amendment in a civil proceeding." Id. at 326. Despite the

13   generosity of the standard, it is nonetheless true that

14   permitting simultaneous proceedings may seriously undermine the

15   ability of a person presumed innocent to defend himself and may

16   provide the prosecution with an undue advantage because it will

17   have access to the evidence tendered in the bankruptcy

18   proceedings.

19                    **2.   Factual Findings**

20        While this court reviews the Bankruptcy Court's decision to

21   deny the stay on an abuse of discretion standard, it may

22   nonetheless review the factual findings of the Bankruptcy Court

23   for clear error. Consequently, if the court finds any of the

24   Bankruptcy Court's findings of fact to be clearly erroneous, it

25   may reverse those findings and any order premised on the

26   findings.

1        In its order denying Appellants' motion for a stay, the
2   Bankruptcy Court made the following findings of fact:

3        (1)   That the adversary proceedings bear no significant
4              relationship to the allegations in the superceding
5              indictment against Salyer. Memorandum Opinion at 3-6.

6        (2)   That the court does not foresee any testimony Salyer
7              might give in the adversary proceedings that would
8              legitimately be subject to Salyer's Fifth Amendment
9              rights. Memorandum Opinion at 5.

10       (3)   That the longer the adversary proceedings are delayed,
11             the less likely it is that the Trustee will be able to
12             recover the assets he seeks because there is a real
13             risk that Appellants would dissipate the assets of the
14             debtor entities. Memorandum Opinion at 8-9.

15       (4)   That the public's interests in ensuring that aggrieved
16             persons are made whole as rapidly as possible and in
17             the prompt resolution of civil cases far outweighs the
18             public's interest in the integrity of criminal cases
19             here because the government has not sought to
20             intervene in these adversary actions.[6] Memorandum
21             Opinion at 10.

22   _____

23       [6] The government has intervened in non-bankruptcy civil
     proceedings relating to U.S.A. v. Salyer, and a stay is in place
24   for those cases. See Morning Star Packing Company v. SK Foods LP,
     2:09-cv-00208-MCE (E.D. Cal.); Four In One Company, Inc. v. SK
25   Foods, LP, 2:08-cv-03017-MCE (E.D. Cal.). Stays are also in effect
     for two other non-bankruptcy civil case. See Brewer v. Salyer,
26   1:06-cv-01324-AWI-DLB (E.D. Cal.); Morning Star Packing Company v.
     SK Foods, Merced County Superior Court Case No. CU 151242.

1    (5)    That the interest of the Trustee and the creditors in
2            a speedy resolution of the adversary proceedings is of
3            prime importance in this case. Memorandum Opinion at
4            6.
5    (6)    That the joint plan of liquidation proposed by the
6            secured creditors and the unsecured creditors are
7            often fragile and, thus, any delays in the adversary
8            proceedings would "almost certainly be to the
9            detriment of creditors." Memorandum Opinion at 9-10.
10   The court finds that the fifth and sixth findings of fact
11   are not clearly erroneous. However, the court determines that
12   the first four findings are clearly erroneous in whole or in
13   part.

14                    **i.    Relationship Between Adversary Proceedings
                              and Criminal Indictment, Implication of**
15                    **Fifth Amendment**

16   The Bankruptcy Court correctly noted that, "the strongest
17   case for deferring civil proceedings until after completion of
18   criminal proceedings is where a party under indictment for a
19   serious offense is required to defend a civil or administrative
20   action involving the same matter." <u>Dresser Indust., Inc.</u>, 628
21   F.2d at 1375-76. Specifically, "[t]he noncriminal proceeding, if
22   not deferred, might undermine the party's Fifth Amendment
23   privilege against self-incrimination, expand rights of criminal
24   discovery beyond the limits of Federal Rule of Criminal
25   Procedure 16(b), expose the basis of the defense to the
26   prosecution in advance of criminal trial, or otherwise prejudice

17

1   the case." <u>Id.</u> at 1376. In <u>Dresser</u>, the Court of Appeals

2   reasoned that, "[t]he case at bar is a far weaker one for

3   staying the administrative investigation [because no indictment

4   has been filed and, thus,] no Fifth Amendment privilege

5   threatened." The Ninth Circuit adopted this reasoning in

6   <u>Molinaro</u>, where it held that the district court did not abuse

7   its discretion by deciding that the burden on the defendant's

8   Fifth Amendment privilege was negligible because no related

9   criminal indictments were pending against him at the time of its

10  ruling. 889 F.2d at 903.

11      Ultimately, when considering a motion to stay proceedings,

12  courts must determine "the extent to which the defendant's fifth

13  amendment rights are implicated." <u>Id.</u> at 902. Here, the

14  Bankruptcy Court conducted a technical comparison of the

15  specific allegations in the criminal indictment and the

16  adversary proceedings. Accordingly, it "conclude[d] that, with

17  one minor exception, the factual allegations in the adversary

18  proceedings bear no significant relationship to the allegations

19  in the indictment." Memorandum Opinion at 3. The Bankruptcy

20  Court continued to reject Appellants' contention that the

21  reference to an enterprise in some of the adversary complaints

22  is the same enterprise alleged in the criminal proceeding. It

23  found that the enterprise alleged in the indictment was premised

24  upon allegations of "mail fraud, wire fraud, and bribery with

25  respect to the prices charged and quality of product sold to its

26  customers, whereas the adversary complaints allege inter-company

1  transfers among the Salyer entities themselves, commingling of

2  assets, common ownership, management, and control, intermingling

3  of business operations and activities, and so on." Id. at 4.

4       While the Bankruptcy Court may be correct that specific

5  allegations of the criminal indictment are, for the most part,

6  distinct from the specific allegations of the adversary

7  proceedings, its conclusion that these distinctions demonstrate

8  that Salyer's Fifth Amendment rights are not implicated is

9  clearly erroneous. As an initial matter, the assets sought in

10 the criminal forfeiture proceedings overlap to a significant

11 degree with the assets sought in the adversary proceedings.

12 Moreover, Salyer's Fifth Amendment rights are implicated any

13 time that he testifies or responds to discovery requests that

14 are admissible to prove that he engaged in the conduct alleged

15 in the indictment. This conduct can exceed the specific

16 allegations of the indictment. Specifically, under Fed. R. Evid.

17 404(b), evidence of crimes, wrongs, and acts not alleged in the

18 indictment, may be used to prove "motive, opportunity, intent,

19 preparation, plan, knowledge, identity, or absence of mistake or

20 accident." Under this rule, for example, evidence that Salyer

21 fraudulently transferred assets might be used to prove that

22 Salyer intended to commit the fraudulent acts alleged in the

23 indictment, or had a plan to conceal fraudulently obtained

24 assets. Indeed the asserted concealment of assets was a

25 predominant governmental theme relative to bail.

26      Put directly, even though the specific allegations of the

19

1   indictment and the adversary proceedings may differ, the

2   bankruptcy litigation seriously implicates Salyer's Fifth

3   Amendment rights. He has been criminally accused of engaging in

4   an enterprise though which he allegedly obtained assets, which

5   the Trustee is now seeking to recover and to prevent fraudulent

6   transfer of them. Accordingly, the Bankruptcy Court's finding

7   that the proceedings do not overlap and that Salyer's Fifth

8   Amendment rights are not implicated in the adversary proceedings

9   is clearly erroneous.[7]

10              **ii.   Risk that Appellants will Dissipate Assets**

11          When considering whether the Trustee and creditors would

12  suffer prejudice if a stay were to issue, the Bankruptcy Court

13  reasoned as follows:

14          In the present case, the court has already been
            sufficiently persuaded of a . . . risk of dissipation
15          of assets to issue a preliminary injunction against
            the defendants in the adversary proceedings, who are
16          moving parties in this motion, from transferring
            assets previously transferred to them by or through
17          the debtor. The moving parties now argue that the
            injunction would protect the trustee and creditors
18          from any risk of further dissipation of assets during
            the pendency of a stay. The court concludes to the
19          contrary - the findings and conclusions upon which the
            injunction is based persuade the court that a real
20          risk continues to exist.

21          _____

22              [7] The court notes that the Trustee objects to the declaration
            of counsel for Appellants filed in support of the appeal on the
23          grounds that it was not raised before the Bankruptcy Court. The
            Trustee is correct that this court should not consider evidence
24          that was not before the Bankruptcy Court. Appellants agree that the
            evidence was not presented to the Bankruptcy Court, but rather was
25          provided to this court to provide an overview of matters of which
            the Bankruptcy Court was aware. Because this court has not relied
26          on the affidavit in reaching its conclusions, the motion to strike
            is granted.

Memorandum Opinion at 9. The Bankruptcy Court does not in any way address why the entrance of the preliminary injunction will not protect the Trustee and the creditors. Appellants raised this serious concern before the Bankruptcy Court. Failure to provide any explanation as to why the preliminary injunction is insufficient to protect the Trustee and creditors from dissipation of assets due to debtor conduct is clear error.[8]

### iii. Balance of Public Interests

In applying the Keating test, the Bankruptcy Court was tasked to evaluate the public interest. It explained that while it recognizes the public's interest in the integrity of criminal cases, that interest is relatively low in the instant case because the government has chosen not to intervene in the adversary proceedings. The court has been unable to find any case to support the contention that the weight of the public's interest in the integrity of criminal proceedings is somehow influenced by the prosecutor's decision to intervene. See, e.g., Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum, 2:09-cv-0954-FCD-EFB, 2009 U.S. Dist. LEXIS 60849, at *10 (E.D. Cal. Jul. 15,

---

[8] The Bankruptcy Court may have been had in mind the Drum Line issue. But that itself requires testimony that may involve Salyer's Fifth Amendment rights. While the court may share some of the same concern about that single incident, it is, at this stage, unclear as to whether there was a violation of the temporary restraining order and, thus, relying on it seems misplaced in light of the serious adverse consequences. Furthermore, the parties have represented that the only remaining assets are real property and money. These assets, unlike the Drum Line, cannot be transferred without the approval of the Bankruptcy Court and, thereby, then present little or no risk that they will be wrongfully transferred while the preliminary injunction is in effect.

2009) (Court does not mention intervention by government); <u>James v. Conte</u>, No. C. 04-5312 SI, 2005 U.S. Dist. LEXIS 46962, *5 (N.D. Cal. Apr. 19, 2005) (same); <u>Javier H. v. Garcia-Botello</u>, 218 F.R.D. 72, 75-76 (W.D.N.Y 2003), (court simultaneously granted a stay of proceedings and denied a motion to intervene by the government). Indeed, it seems misplaced to suggest that the prosecutor's view demonstrates the public interest in light of the constitutionally protected right of presumed innocence and the obligation of proof which falls only on the prosecution. The Bankruptcy Court has not identified any other reasons why the public interest in the integrity of this criminal case is relatively low. This conclusion is also in clear error. There is no factual basis to support the Bankruptcy Court's conclusion that the public interest in the integrity of the criminal case is "far outweighed in this case by the public's countervailing interests in ensuring that aggrieved persons are made whole as rapidly as possible . . . and by the public's interest in the prompt resolution of civil cases." Memorandum Opinion at 10 (citations and internal quotations omitted).[9]

### 3.   Reversal of Bankruptcy Court's Decision

For the reasons discussed above, the court finds that the

---

[9] Appellants also argue that the Bankruptcy Court made an error of law in its application of the <u>Keating</u> factors. Specifically, they argue that the court wrongly gave the interests of the creditors the weight of the interests of plaintiffs. Given the court's conclusion that there were factual errors that demand reversal, the court need not address the merits of this argument.

1  Bankruptcy Court made several significant erroneous factual
2  findings in its application of the Keating factors. Based on
3  these clearly erroneous factual findings, the court determines
4  that the Bankruptcy Court abused its discretion in denying
5  Appellants' motion for a stay. The remaining question in this
6  appeal is, then, what order the court should issue. Remand with
7  instructions might well be appropriate because this court
8  reviews for abuse of discretion. However, the court finds that
9  it should craft an order staying proceedings in part because it
10 is responsible for the conduct of the criminal trial and is more
11 familiar with the values informing criminal proceedings.

12      Accordingly, the court orders a stay of all further
13 bankruptcy proceedings where Appellants make a credible showing
14 that discovery from or testimony of Scott Salyer or his criminal
15 counsel is relevant to the proceedings. The court wishes to be
16 clear, the orders heretofore issued on a preliminary basis are
17 unaffected by this order.

18                         **IV.  CONCLUSION**

19      For the foregoing reasons the court REVERSES the decision
20 of the Bankruptcy Court denying Appellants motion to stay as
21 described above.

22      The court FURTHER ORDERS that the Trustee's motion to
23 dismiss is DENIED and the Trustee's motion to strike is GRANTED.

24      IT IS SO ORDERED.

25      DATED:  December 9, 2010.

26
                                    LAWRENCE K. KARLTON
                                    SENIOR JUDGE
                          23        UNITED STATES DISTRICT COURT